## Jeremiah Ready v. Edmund R. Kearsley and others.

*Uses, Statute of.* All English statutes in force in Michigan having been repealed in 1810, and no Statute of Uses passed in the State until the Revision of 1846, there was nothing between those periods to prevent the creation of any trust which would have been valid at the common law.

*Deed, ambiguity in.* A deed to S. or his heirs is not void for ambiguity, but is a valid conveyance to S., if he be living, and to his heirs if he be dead.

*Detroit Land Board: Construction of deed: Trusts.* The Governor and Judges of Michigan, acting as a Land Board, having laid out the town of Detroit, gave a deed of lot 47 to S. This town plan was soon abandoned, and a new one made, upon which lot 47 became lot 49. S. went into possession of lot 47 new plan, and the Board deeded lot 49 to another person. By intermediate conveyance from S. describing lot 47, K. acquired the possession thereof before the discrepancy between the old and new plans had been discovered. The Land Board then, on application of K., gave a deed of lot 47 to "S. or his legal heirs and representatives, but always in trust and for the use and benefit of the rightful owners of the

premises hereinafter mentioned, claiming the same by virtue of the mesne conveyances from the original grantee, or otherwise howsoever, his, her or their heirs," &c. This deed was before the Revision of 1846. *Held,*

1. That as this was the first conveyance of this lot 47 by the Land Board, the "original grantee" mentioned in it was S., to whom it was given.

2. That this deed did not vest in S. any power of selection as to the beneficiaries under it, but the deed itself undertook to designate the persons entitled.

3. That there was no uncertainty in the deed as to the *cestuis que trust,* but they were pointed out as the persons claiming the lot by mesne conveyances or otherwise from S. And as K. had become the equitable owner of the rights acquired by S. under his first deed, he was the "rightful owner" in the sense of this conveyance.

4. That the naked trust created by this deed was executed and became a legal title in K. when the Statute of Uses in the Revision of 1846 took effect.

*Execution of power: Unauthorized conditions.* As a general rule, if the donee of a power in undertaking to execute it, annexes unauthorized conditions, the conveyance will be valid and the conditions void. But if the grantee has only a naked legal right to a conveyance, coupled with no equity, and he sees fit to accept a conveyance charged with a trust in favor of the party who has become vested with his equity, Chancery may compel him to execute the trust.

*Land Board, powers of.* The Governor and Judges of Michigan Territory acting as a Land Board, and the Mayor, Recorder and Aldermen of the city of Detroit, their successors, were vested by the Acts of Congress of 1806 and 1842 with both judicial and discretionary powers, for public reasons and public purposes; and so long as their acts are within the spirit of these statutes, they are entitled to liberal intendments in their support. Where therefore the Board grant a donation lot by conveyance in trust, which, under the circumstances of the particular case, will better accomplish the legislative intent than an absolute deed, such conveyance is not to be held void on the ground of want of authority in the Board to create trusts.

The Land Board having authority to grant to each of a specified class of persons a donation lot, does not exhaust its powers until the grant has been made effectual. Where, therefore, the same lot was granted to two persons, and the second grantee had obtained and held the lot, the Board had power to convey another donation lot to the first grantee in lieu of the one thus lost.

*Conveyance by Land Board.* The mere allotment of a piece of land by the Board as a donation lot, not followed by a conveyance, did not vest either a legal or an equitable title in the person to whom it was allotted as against a subsequent grant by the Board. The deeds alone fixed the rights of beneficiaries.

*Practice on exceptions.* On bill of exceptions a case is not open to review on the evidence; and an objection to a deed, that there was no proof of its delivery, or of the grantee being alive at its date, cannot be considered in the Supreme Court, where it does not appear from the record to have been taken on the trial below.

*Heard October 5th, 6th and 7th,* 1865.            *Decided April 24th.*

Error to Wayne Circuit.

This was an action of ejectment brought by the original plaintiff, Jonathan Kearsley, now deceased, against Jeremiah Ready. The names of the defendants in error were substituted as plaintiffs below, under the statute.

On the 16th day of June, 1856, one James A. Girardin, who claimed an interest in the lot as one of the heirs of James Girardin, deceased, under a deed of the Mayor, Recorder and Aldermen, of May 27th, 1856, to said heirs, purchased of Daly the buildings on the lot, and received possession thereof from him; and the several sub-tenants in occupation of the buildings and lot, thereupon attorned to Girardin and took leases from him. Having in this manner obtained possession of the lot and buildings thereon, Girardin thenceforward claimed to hold the same for himself and the other heirs of James Girardin, deceased, and adversely to Kearsley, and subsequently and before the commencement of this suit, leased the premises to the defendant, who was in possession, claiming to be Girardin's tenant, at the commencement of this suit.

Judgment was rendered for plaintiffs. All other facts necessary to a full understanding of the rulings of the Circuit Judge, and the points decided, are fully stated in the opinion.

*C. Tryon*, and *Knight & Jennison*, for plaintiff in error.

The legal title to the land in question was in the government of the United States, acquired by conquest and treaty.

The defendants in error claim that the deed of trust from the Mayor, Recorder and Aldermen of Detroit, to Charles Stewart, conveyed said title out of the Government. The plaintiff in error contends that that deed is void, and does not convey any title whatever; and that the legal title to said land remained in the Government up to the time when the said Mayor, Recorder and Aldermen executed the deed to the heirs of James Girardin, deceased, and that the latter deed conveyed to said heirs the full legal title to and possession of said land.

The Mayor, Recorder and Aldermen of Detroit had no power to execute such a deed as the one to Stewart. The act of Congress, approved April 21, 1806, conferred upon the Governor and Judges of the Territory of Michigan power and authority to lay out a town, including the whole of the old town of Detroit, and to hear, examine, and finally adjust all

claims to lots therein, and give deeds for the same.—6 *U. S. Stat. at Large,* 62.

By the act of Congress, approved August 29, 1842 (5 *U. S. Stat. at Large,* 541), all the powers and obligations conferred upon said Governor and Judges were transferred to and vested in said Mayor, Recorder and Aldermen. No other or new powers relative to disposing of lands and executing deeds for the same were given them.

The powers so conferred upon the Governor and Judges were specific and designated; and the same powers and obligations were so transferred to, and vested in said Mayor, Recorder and Aldermen. Neither said Governor and Judges, nor said Mayor, Recorder and Aldermen had the right to delegate those powers to any other person or persons, nor to confer any authority upon any one to act for them in executing said trusts, which were reposed in them and them only. They, as the attorneys and commissioners of the government, were required to hear, examine and finally adjust all claims to lots, and give a deed to each and every person entitled thereto, by the terms of said act.—6 *Mich.* 189.

The law that an attorney is bound strictly by the authority and power given him by his principal, is too well settled to need the citation of numerous authorities. On that point there is no conflict. It is fully considered in Sugden on Powers, Vol. 1, Ch. 5, sec. 1, p. 222, of the transfer of powers. Where a power which cannot be transferred is delegated, the delegation is simply void.—*Sugd.* 225; 2 *Atk.* 88; 15 *Law. L.* 120.

No trust of any description can be created for any purpose whatever, except such as is expressly authorized and defined.—14 *Wend.* 376.

The plaintiff in error further contends, that said deed is uncertain, as to the grantee, and is therefore void, in that it purports to convey to " *Charles Stewart, or* his legal heirs or representatives." If a grant be made to J. S. or W. S., in the disjunctive, and in such like cases, it is utterly void for uncer-

tainty.— *Shep. Touch. Title, Grant,* 237; *Co. Litt.* 3 *a*; 8 *Johns.* 385.

The said deed is void for uncertainty as to the person or persons of the *cestuis que trust.* It is contended that the person for whose use a trust is created, must be as certainly described in the deed as the grantee; the same as if the deed conveyed the land directly to the *cestui que trust.*— 9 *Johns.* 74.

In speaking of a case decided in England, Willis, in his treatise on trust, says : " So that by the great authority of this determination, on clear law and reason, the *cestui que trust* is actually and absolutely seized of the freehold."— *Willis on Trustees,* 108 ; 10 *Law L.* 51.

He that accepts a trust, by becoming an acting trustee, takes it for the benefit of the person for whom he is trusted, and not for any advantage to himself. So entirely does this maxim prevail, that if a trust be imposed, the trustee cannot take beneficially, although the trust be too indefinite for execution.—10 *Law L.* 57 ; 2 *Br. C. C.* 270 ; 1 *Eden,* 226 ; *Cruise's Dig.* 484, *and cases referred to* ; 2 *Vesey & Beam.* 297.

In this case, who is to decide who the rightful owners are ?

The plaintiff in error further contends, that even if the said deed to Stewart, in trust, etc., is not void, it conveys no title whatever to Kearsley, or said defendants. The deed of said Stewart to Wyeth is for lot 47, by the old plan, and the land claimed to be conveyed to said Stewart, by said deed of trust, is for lot 47 by the new plan, and is a different piece of land. Besides, said deed from Stewart to Wyeth is a quit-claim, and therefore does not, by operation of law, convey any right to his grantee, of a subsequently acquired title, even if it had been the same land. — 9 *Cow.* 13 ; 4 *Wend.* 300 ; 14 *Johns.* 193 ; 11 *Id.* 91.

*Douglass & Andrews,* for defendants in error.

The error into which all parties had doubtless been led by the action of the Governor and Judges in respect to the plan of the city was discovered in 1846, after the powers and duties of

the Governor and Judges, as a Land Board, were transferred to the Common Council of Detroit. And in that year the Common Council executed the instrument known as the "trust deed."

What is the proper construction and effect of that "trust deed?"

The recitals purport to explain its consideration, purpose and object. These recitals state the purpose and object to be, in general terms, to correct errors in the execution of their trusts as a Land Board by the Governor and Judges, and to do substantial justice.

They then go on to state the facts, which show what particular error the conveyance was designed to correct, and what just claim it was intended to satisfy. The grant is to Stewart *or* his heirs, which must be construed to mean to Stewart, if living; if deceased, to his heirs. If the Land Board had known or could safely have assumed to decide that Stewart was living, and had never conveyed the title derived under the Governor and Judges' deed of 1807, the grant would have been to him *and* his heirs simply.

The inaccurate and inartificial language of this declaration of trust creates the whole difficulty in the construction of the instrument. The conveyance is declared to be in trust for the use and benefit of the rightful owners of the *premises herein-after mentioned*, (to wit, lot 47, new plan,) "claiming the same by virtue of mesne conveyance from the original grantee, or otherwise howsoever."

If this trust clause stood alone it might require correction by a bill in equity, but if, taking the whole instrument together, the intent clearly appears, that intent can be carried into effect by construction. — 7 *Mich.* 69.

It is claimed that the deed is void, because in the alternative as to the grantee, "to Charles Stewart *or* to his legal heirs or representatives." Rightly construed it is to Charles Stewart, if living; if deceased, to his heirs, for he could have no heirs if living. "Representatives," in this connection, is but a

synonym for heirs. There is no uncertainty as to the grantee. Whether the grant is to Stewart or his heirs depends upon a fact which is certain and capable of ascertainment.

It is claimed that the deed is void on account of uncertainty as to the *cestui que trust.* But, if Stewart or his heirs had conveyed lot 47, old plan, who were the legal owners of the title was certain and capable of ascertainment, though unknown to the Land Board.—1 *Barb. Ch.* 1; 19 *Vt.* 613.

Through the operation of the covenant of warranty in the deed from Wyeth to Kearsley, the subsequent deed of Stewart to Wyeth enured to Kearsley's benefit, and so would give him a perfect title, even if the first informal deed of Stewart to Wyeth were void.—*Rawle on Cov.* 413; 2 *Washb. on Real Pr.* 473, 474.

Objection was made to the admissibility of each of the deeds above mentioned, under which the plaintiffs below sought to derive title from Stewart, on the ground that their execution was not proved. But they were all over thirty years old and produced from the proper custody, and admissible in evidence as ancient deeds, without proof of their execution.— 1 *Greenl. Ev.* § 144.

Objection was also made that these deeds were not properly executed or acknowledged, but no defects either of execution or acknowledgment were pointed out, and therefore no valid exception could be founded upon such objection. Moreover, we submit that they were executed, etc., in conformity with the laws then in force.— 6 *Mich.* 17; *Rev. Laws of* 1827, 258, 260; *Sess. L.* 1861, *p.* 16.

It being conceded that the plaintiffs below were the heirs of Jonathan Kearsley, we submit that they proved themselves to be the legal owners of the title conveyed by the Governor and Judges to Stewart in 1807, deriving that title from Stewart, and therefore the beneficiaries or *cestuis que trust* in the trust deed of 1846 and by operation of the statute of uses and trusts, the legal owners of the lot thereby conveyed.

COOLEY J.

The defendants in error, as devisees of Jonathan Kearsley deceased, brought ejectment against Ready, to recover lot 47, in section 8, according to the Governor and Judges' plan of the city of Detroit. On the trial they gave evidence tending to show that Ready went into possession as assignee of their lessee; and upon this they claimed that he was estopped from showing title in himself as against them. The Circuit Judge took the question on this branch of the case from the jury, by charging them that they need not consider it, inasmuch as the plaintiffs had established a complete title to the lot by other evidence, and the jury found for the plaintiffs accordingly. Exception was taken to this charge, and it therefore becomes necessary to consider the evidence upon which it was based.

It appears that on February 11, 1807, the Governor and Judges of Michigan Territory, in pursuance of the act of Congress "to provide for the adjustment of titles to land in the town of Detroit and Territory of Michigan, and for other purposes," approved April 26, 1806, executed to Charles Stewart a deed of a lot in Detroit, described as lot 47 in section 8, as a donation lot to which he was entitled under said act. February 1, 1827, Stewart conveyed this lot to George Wyeth, who had previously given a warranty deed of it to Jonathan Kearsley.

It appears, however, that the Governor and Judges made two plans of the town of Detroit, the first of which was not put upon record, and the second was not formally adopted by them until April 27, 1807. Lot 47 by the old plan became lot 49 by the new. Stewart and those claiming under him seem to have taken it for granted that their deeds covered lot 47 according to the new plan, and possession was taken of that lot by them. February 21, 1846, on discovery of the discrepancy between the two plats, the Mayor, Recorder and Aldermen of the City of Detroit, who, by virtue of an act of Congress, approved August 29, 1842, had been vested with the

powers formerly possessed by the Governor and Judges, as a Land Board, executed a deed upon which the principal questions in this case arise. This deed is so important and peculiar that it is here inserted at length:

" *The Mayor, Recorder and Aldermen of the City of Detroit:* To all to whom these presents shall come:

*Whereas,* By the act of Congress of the United States, approved April 21, 1806, and entitled 'An act to provide for the adjustment of titles to the land in the town of Detroit and Territory of Michigan, and for other purposes,' the Governor and Judges of the then Territory of Michigan were constituted a Land Board, with power to lay out the town of Detroit, to finally adjust all claims to the lots therein, to grant donation lots to persons entitled thereto, and to sell the residue of the land for certain purposes therein mentioned;

*And, whereas,* By the act of Congress supplementary to the said act, approved August 29, 1842, the powers vested as a land board in said Governor and Judges, were transferred to the Mayor, Recorder and Aldermen of the City of Detroit;

*And, whereas,* The execution of said trust by said Governor and Judges has not been fully perfected, and errors have been found to exist in carrying out the same, and it is deemed necessary by the present board, for the quieting of the titles, and the purposes of substantial justice, to interpose their action in the premises in cases requiring it;

*And, whereas,* It appears that said Governor and Judges, on the 11th day of February, 1807, deeded to Charles Stewart lot forty-seven (47,) in section eight (8,) by the old plan of Detroit, which lot became lot forty-nine (49,) in section eight (8,) by the new plan of Detroit; and the said Governor and Judges, on the 29th day of March, 1822, deeded to Thomas Rowland said lot forty-nine (49,) in section eight (8,) new plan, and that lot forty-seven (47,) section eight (8,) new plan, was located and occupied by said Stewart and his grantees, as the lot deeded to him February 11th, 1807.

*Therefore,* Know ye, that we, the said Mayor, Recorder and

Aldermen of the City of Detroit, acting under the act of Congress aforesaid, of August 29th, 1842, in consideration of the premises, hereby remise, release and forever quit-claim unto the said Charles Stewart, or to his legal heirs and representatives, but always in trust and for the use and benefit of the rightful owners of the premises hereinafter mentioned, claiming the same by virtue of the mesne conveyances from the original grantee or otherwise howsoever, his, her, or their heirs and assigns forever, all the estate, right, title, interest, use, trust, property, claim and demand whatsoever, both at law and equity of us, the said Mayor, Recorder and Aldermen of the City of Detroit, of, in and to the following described premises, lying and being in the City of Detroit aforesaid, and designated and described as follows, to wit: Being lot forty-seven (47,) in section (8,) as the same is numbered in the recorded plan of the city of Detroit; to have and to hold said released premises as aforesaid, unto the said Charles Stewart, or to his legal heirs and representatives, but always in trust and to the use and benefit aforesaid, his or their heirs and assigns, to his or their own proper use and benefit forever.

In witness whereof, the said Mayor, Recorder and Aldermen of the City of Detroit have hereunto set their hands and affixed their seals, this twenty-first day of February, one thousand eight hundred and forty-six."

The counsel for the defendant (below) objected to the admission of this deed in evidence, for several reasons, which I shall proceed to consider, though not in the precise order then presented.

*First: That it was void under the Statute of Uses.* This objection is abandoned in this Court; the date of the deed appearing to be before the Statute of Uses took effect. Prior to March 1, 1847, when the revision of 1846 took effect, we had no statute of uses in this State, and as all English statutes were repealed in 1810 (*Cass Code*, 119), there was nothing at the date of this deed to prevent the creation of any trust which would have been valid at the common law.

*Second: That it was void for uncertainty because in the alternative.* The deed is to Stewart or his heirs; and it is supposed to fall under the condemnation of that rule of the common law, that a grant made to J. S. or W. S. in the disjunctive, is void for uncertainty. — *Bac. Abr. Grant, C.*; 2 *Washb. Real Pr.* 566. And see *Morse v. Carpenter*, 19 *Vt.* 615; *Jackson v. Cory*, 8 *Johns.* 385; *Hornbeck v. Westbrook*, 9 *Id.* 73.

It is evident, however, that the reason upon which the case instanced rests, does not apply to this deed. A grant to J. S. or W. S. is void from the manifest impossibility of determining which shall take, when the grantor has failed to express his intent. But no such difficulty can arise in the case of a grant to J. S. or to his heirs. If J. S. is living, he has no heirs; and no two parties can claim adversely as grantees under the deed. The manifest intent here was to vest the title in Stewart, if living, and in his heirs or devisees, if he were then dead. Conveyances in this form by public officers or boards have not been uncommon, for the reason that such conveyances are usually made at a period subsequent to that when the right to the conveyance accrued; and it is not always known when the deed is made, that the party entitled is living. In *Hunter v. Watson*, 12 *Cal.* 363, it was held that a deed to a person not then living and his heirs, would be void; since the word "heirs" was a word of limitation and not of purchase, and consequently there was no person to take under it. The validity of deeds with an alternative clause like the one before us was directly affirmed by the Supreme Court of the United States in *Hogan v. Page*, 2 *Wallace*, 605, and as this deed was executed under a power granted by the National Government, we should hold ourselves bound by the decisions of the national courts in passing upon its validity.

*Third: That the deed is uncertain as to cestui que trust.* As the plaintiff below claimed to have acquired title to the lot by virtue of the operation of the Statute of Uses upon this deed, it becomes necessary to consider whether there is any such

ambiguity in designating the *cestui que trust*, as is supposed by the objection. This brings us to a careful consideration of the terms of the conveyance, that we may ascertain, if possible, its real intent.

It appears by the recitals that this deed was executed because, by mutual mistake, Stewart had taken possession of the wrong lot, and the one actually conveyed to him had been subsequently deeded by the Governor and Judges to Thomas Rowland. The deed in question was given to right the unintentional wrong, "for the purposes of substantial justice." Lot 47, of which Stewart had actually taken possession on the supposition that it was his own, still remained ungranted by the Land Board, and, "therefore," "in consideration of the premises," the board proceeds to convey to him, or to his legal heirs or representatives, "but always in trust and for the use and benefit of the rightful owners of the premises hereinafter mentioned, claiming the same by virtue of the mesne conveyances from the original grantee, or otherwise howsoever, his, her, or their heirs and assigns forever, all," &c., the said lot 47.

Let us now look at the position of the various parties when this deed was given, that we may ascertain, if possible, who are the parties described.

1. As to the "original grantee," mentioned in the deed, we can be in no doubt. This is the first deed given of this lot, and no other person answers this designation except the grantee or grantees here named.

2. The *cestuis que trust* are "the rightful owners," "claiming the same by virtue of the mesne conveyances from the original grantee, or otherwise howsoever." Kearsley, it appears, had been in possession of this lot, claiming the same by virtue of mesne conveyance from Stewart. The description contained in his deed was an exact description of this lot, and he only failed to acquire a title by it from the fact that the same description was not applicable to the same premises in February, 1807, when Stewart obtained his first deed. He was the "rightful," equitable "owner" or assignee of all the rights

which Stewart obtained under the first deed, and was the only person for whose benefit this deed, according to its recitals, could have been properly made. Now it is perfectly manifest that the words "rightful owners" are not used here in the ordinary technical sense; for to give them that meaning would be repugnant to the whole instrument. There could be no rightful owner, in a legal sense, except the Government itself, if the Government had never before conveyed the title; but the deed assumes that, notwithstanding the want of a conveyance to him, equitable rights may have been acquired under Stewart or his legal representatives, which should be recognized and protected by any conveyance now made.

Nothing can be plainer than that, if there was no prior conveyance of the lot by the Land Board, the persons whom this deed was intended to benefit were those claiming under Stewart, "by mesne conveyances," "or otherwise howsoever." Kearsley claimed this lot by mesne conveyance; and though his claim was ineffectual for the reason stated, his equitable rights were unquestionable, and included all the equities which were recognized by the recitals of this deed as its sole consideration. If, therefore, the question were between Stewart as trustee, and Kearsley claiming to be *cestui que trust*, a court of equity could have no difficulty in determining that the former took the conveyance in trust for the party who had become vested with all the equities which the conveyance recognizes and seeks to protect.

It does not become necessary to consider what would have been the effect of this deed had it appeared that there had been any prior conveyance. or attempt at conveyance, on the part of the Government, or that any other person had become vested with equities which attached to this lot. This deed may have been designed to protect the rights of such possible grantees, or equitable claimants; but until it is shown that some person is in position to contest the equitable rights of Kearsley, he is the only person who appears to answer the description of the *cestui que trust* in the deed.

If,.therefore, the deed in this case was valid, as the trust declared was a mere naked trust, and Kearsley, as *cestui que trust*, was entitled to the possession of the premises, and the receipt of the rents and profits, his equitable title became confirmed as a legal estate by virtue of the Statute of Uses of 1846. — *Comp. L.* § 2633; *La Grange v. D'Amoureux,* 1 *Barb. Ch.* 18.

*Fourth : The deed is claimed not to have been within the powers conferred upon the Land Board.* This objection, as made in the Court below, was vague and indefinite, but in this Court counsel specify objections as follows :

1. The Land Board had power to convey a donation lot to the person entitled, but not to convey to Stewart or any other person, entitling him to adjudge who should receive the benefits. The answer to this objection is, that this conveyance does not purport to confer upon Stewart any power of selection or judgment with respect to the beneficiaries. The deed was designed to fix conclusively the rights of parties; and if any question should arise between adverse claimants as *cestuis que trust,* the courts, and not Stewart, would have power to determine it.

2. The Land Board, it is said, had no power to create trusts. This objection is based upon the principle that the donee of a power is required to follow his authority strictly in its execution. But if Stewart was entitled to a donation lot, the conveyance of one to him would be strictly within the power, and the only question that could arise would be as to the validity of the trust with which the conveyance was charged. The general rule is, that if the donee of a power, in undertaking to execute it, annexes unauthorized conditions, the conveyance will be valid and the conditions void. (2 *Sug. on Powers,* 76; *Alexander v. Alexander,* 2 *Ves. Sen.* 640; *Sadler v. Pratt,* 5 *Sim.* 632; 2 *Washb. Real Pr.* 328.) Stewart or those claiming under him are the only persons entitled to make this objection; but I think the circumstances of this case would preclude their making it.· If Stewart had a right to a convey-

ance of this lot, as a donation lot, it was a naked legal right, coupled with no equity; and if he saw fit to accept a conveyance charged with a trust in favor of the party who had become vested with his equity, there can be no doubt, I think, that a Court of Chancery would have compelled him to execute the trust.

But I do not concede that the powers of the Land Board are to be construed with the same technical strictness as those of an ordinary attorney or donee of a power. The statutes under which they acted vested them with both judicial and discretionary powers, for public reasons and public purposes; and so long as their acts were within the spirit of the law, they are entitled to liberal intendments in their support. A conveyance which at the date of this deed would have vested an absolute title to this lot in Stewart, might have been strictly within the powers of the board, but it would not have tended to accomplish the beneficent and humane purposes of the statutes creating those powers. A conveyance having the effect which the one before us was designed to have, could alone accomplish those purposes; and we should therefore be defeating the legislative intent if we should follow the letter of the law so strictly as this objection demands.

3. The Land Board, it is further argued, exhausted their power to convey a donation lot to Stewart, when they made the conveyance of 1807. I have already said that the Land Board was vested with large discretionary powers for beneficent purposes. They were to convey to each one of a class of persons, designated, a donation lot. By mistake one certain lot was conveyed to two persons; and it seems to have been assumed that Stewart, though the first grantee, had lost the lot. Stewart, therefore, had failed to receive the benefit which the statute designed for him. Now there can be no doubt that the Land Board had a right to convey two donation lots to Stewart and Rowland. They had conveyed but one to both, and one of the two was entitled to another. If

Stewart was not entitled to one, Rowland was. But Rowland had already received a deed by which, whether legal or not, he had obtained the benefit of a donation lot, while Stewart, through mistake, had failed to receive any. A narrow and technical construction of powers would now give Rowland another lot, and deprive Stewart entirely of the intended gift. I do not think we are warranted in such a construction of the law; or in holding that the powers of the board were exhausted at any time before they had made the gift effectual to every person entitled.

I have now considered all the objections made in the Court below to this deed, and none of them seem to me sufficient. It was suggested in this Court that no evidence was given that the deed was ever delivered, or that Stewart was living at its date, or that, if dead, he had left heirs. But these objec tions were not taken in the Court below, and as the case is not here for review upon the evidence, we cannot consider them. Our power upon the exceptions is exhausted when we have determined whether the Court erred in overruling the objections actually made.

I therefore think the evidence established a prima facie title in Kearsley, and it remains to be seen whether this case is rebutted by the evidence given on the part of the defendant.

The bill of exceptions states that the defendant gave evidence tending to show that the heirs of James Girardin deceased, under whom the defendant (below) claimed, became entitled to a deed of lot 45 in section 8 by the first plan of Detroit, which became lot 47 in section 8 by the second plan. What this evidence was does not appear; but I infer from some recitals that something is found upon the records of the Governor and Judges indicating that when deeds came to be given of the donation lots, there was some setting apart of this parcel of land, by lot or in some other mode, as the one which should be conveyed to Girardin's heirs. It was not conveyed by the Governor and Judges, however; and there is nothing in this record which informs us that Girardin's heirs

had ever applied for a conveyance prior to the second deed to Stewart. The inference from the testimony would be that the allotment was made prior to the new plan, and the first we hear of any claim by the heirs of Girardin is in 1856; half a century after the right, if any, accrued.

I need hardly say that no such allotment, not followed by conveyance, could give the heirs of Girardin a title to the lot. It did not even give them an equitable right which they could enforce, either against the Government or its grantee. The allotment was at most only an expression on the part of the Land Board of their intention at that time to convey to the Girardin heirs this particular parcel; but if they had changed that intention the next day, and conveyed this lot to some one else, the remedy of the Girardin heirs would have been confined to a demand for another lot. Where lands were to be conveyed as donation lots, the adjudications of the board determined who were to be beneficiaries; but the deeds alone fixed the rights of the beneficiaries to particular parcels.

Moreover, the mere fact that a parcel had been allotted to a man in 1806, would be very unsatisfactory evidence, even as against the Government, that he was entitled to a conveyance of it in 1856, in the absence of showing that he had asserted his right to it before. Parties do not thus sleep upon their rights; and with some knowledge of the loose and accommodating manner in which business is done by such land boards, a strong presumption would arise that the party's equities had been satisfied in some other mode than by the conveyance of the lot intended. Notwithstanding the allotment, exchanges might be made among the beneficiaries before deeds were given; and if one of the number did not appear to have received any deed, it would still be possible that the Land Board had conveyed to an assignee at his request. We are not required to determine what weight should be given to the presumption arising from lapse of time in this case; for the question is not one of equities, but of legal title; and it is

plain that the heirs of Girardin got no title by force of the allotment alone.

It appears, however, that the Mayor, Recorder and Aldermen of Detroit, sitting as a Land Board, on the 27th day of May, 1856, recognized the equity of the heirs of James Girardin to this lot; and executed a deed to give it effect. But if the previous deed to Stewart was valid, the one to the heirs of Girardin could convey no title. I am of opinion that the Stewart deed was effectual, and that under it Kearsley acquired title to the lot.

I therefore think the judgment of the Court below should be affirmed, with costs.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J. did not sit in this case.