The court submitted, by consent of the parties, the issues as follows, to-wit: "Is the plaintiff the owner of and entitled to the possession of the land described in the complaint?" Answer: "Yes."
The plaintiff introduced in evidence a grant from the State to one McAnally and evidence of surveyors and others tending to show that it embraced the land in dispute. And a deed from W. H. Gentry, Sheriff, to William Lash, Sr., purporting to bear date 2 November, 1869, attached to which deed was a survey purporting to be dated in December, 1871, and recorded in the office of the Register of Deeds of Stokes County on 15 August, 1888, and to support this deed he introduced an execution and Sheriff's return showing the sale of the lands and purchase by W. A. Lash, Sr., on the day this deed bears date.
Plaintiff then introduced evidence to show the death of W. A. Lash, Sr., and proceedings showing the allotment of the land in controversy to Mrs. Powell Hairston, the wife of Cabell Hairston, who was a daughter of W. A. Lash, Sr.
A deed from Cabell Hairston and wife, Powell Hairston, to plaintiff, dated 11 October, 1887, and recorded 14 October, 1887, conveying said lands to plaintiff. *Page 271 
Also introduced evidence tending to show that all these papers embraced the land in controversy. The plaintiff did not connect his title with the grant.
Dr. W. A. Lash testified by deposition that when the land was sold by the Sheriff he bid it off for his father, W. A. Lash, Sr.; that he was a paralytic and witness transacted all his business. "I took possession of the land on 2 November, 1869, and held possession till 7 December, 1870. On 7 December, 1870, I contracted to (395) sell the land to Peter Smith, gave title bond and took notes for purchase money. And Peter Smith held possession from that date till about 14 December, 1877, when he surrendered the possession to me, giving me the title bond, and I surrendered the notes given by him to my father for the purchase money. I have the notes, and now file them to show date of sale and date of surrender of possession and rescission of contract. My father died 27 December, 1877. My father's tenant, George Mounce, held possession of the tract, living on it from 7 December, 1877, till the land was allotted to my sister, Mrs. Powell Hairston. In all the transactions I was acting as agent for my father."
The partition proceedings were introduced, showing date of partition 26 February, 1878.
Peter Smith testified that when he bought the land from Lash he went around the lines and knew the boundaries.
The defendant introduced a grant from the State to himself, dated 2 February, 1881, and recorded 25 February, 1881, and testified that under this grant he took possession during January, 1885, and has been in possession since that date; that his counsel advised him to go and get possession; that he got a key that would unlock the door and went in the nighttime and went in, taking some property with him; that Powell Sands had not finished moving — he had some little property in the house, and some fodder and corn in the kitchen, wheat growing in the fields.
W. H. Gentry testified that he did not make the deed at the day of the sale, nor for a long time afterwards, on account of the boundaries; that there was no survey at that time — not till 1877; that he continued as Sheriff until after the death of W. A. Lash, Sr.; that the deed was not made till the latter part of 1887; Mr. Lash was at the time dead. "I made the deed and delivered it to (396) W. A. Lash, Jr., I think, 1 January, 1878."
R. B. Glenn testified, as attorney for Floyd Nelson, the defendant, in March, 1884: "I began suit for Nelson against Cabell Hairston and wife, Powell Hairston, who were at that time in possession of the land *Page 272 
and before a sale by them to the plaintiff; I got from the Clerk of the Court a summons properly filled up and signed, returnable at the April Term, 1884, and gave the summons to the Sheriff of Stokes County, who deputed J. S. Taylor to serve it; the summons was never returned or docketed on the summons docket, nor was there ever any alias summons issued. Cabell Hairston told me that Taylor had served the summons on him, and had left it with him for his wife to accept service. I repeatedly asked him about it, and he repeatedly promised to return it; for this reason I never issued any other summons. After Fall Term of 1884, having heard that Hairston's tenant had moved out, I advised Floyd W. (E.) Nelson to move in at once and take possession, which he did in January, 1885. I heretofore examined the date in the survey plot attached to the Gentry deed; it read 1877 — it is now changed to read 1871."
Cabell Hairston testified that J. S. Taylor served some paper on him and left it with him, and he promised to have his wife sign it and return it to court, but it had been misplaced and he could not find it.
The defendant asked the following instructions:
"1. That the issuing of the summons in the name of Floyd Nelson v. Cabell Hairston and wife, Powell Hairston, as testified to by witness for defendant, arrests the running of the statute of limitations (397) from the time of service of the summons on Cabell Hairston in April, 1884.
"2. That plaintiff had no paper title.
"3. That plaintiff had not shown that he had been in uninterrupted continuous possession of the land in dispute under known and visible lines and boundaries for seven years under color of title.
"4. That if the deed of Gentry, Sheriff, was not made and delivered to the purchaser during his lifetime, but was delivered after his death to his personal representative, W. A. Lash, it was void and not color of title.
"5. That the grant to the defendant being recorded in 1881, and the deed of William Lash being recorded on the _____ day of _____, 188__, that the said deed to William Lash was only good from the time of its registration.
"That the deed to William Lash, being recorded after the grant to the defendant and after 1 January, 1886, conveyed no title as against said registered grant."
The court declined to give said instructions, except No. 2, which was given, and the defendant excepted to the refusal of the court to give the other instructions. *Page 273 
The court gave the following instructions to the jury in lieu of those asked: "(The first duty of the plaintiff is to show title to the land out of the State; this he seeks to do by means of the grant which has been read. If the plaintiff has located his grant, and satisfied the jury that this grant covers the land in dispute, then the State has parted with its title. It is for the jury to say if the grant has been located.)
"But this is not all that it is encumbent on the plaintiff to show — he must show title against the world; to do this he relies upon a deed from Sheriff Gentry to W. A. Lash, purporting to have been executed in 1869 — partition proceedings of the lands of said Lash among his heirs at law — and a deed from one of the said (398) heirs at law, Cabell Hairston and wife (to whose lot the said lands fell, as plaintiff contends), executed to the plaintiff. The court has already charged you that the plaintiff has no paper title to the land. But he contends that W. A. Lash's deed from Sheriff Gentry constitutes color of title, and that said Lash and those who hold under him have been in the actual adverse continuous possession of said land under known and visible lines and boundaries and under said deed, constituting color of title, for a period of seven years preceding this action, and that hence he is entitled to recover. It therefore becomes material that the jury inquire whether the land in the Lash deed from the Sheriff and in the plaintiff's deed is embraced in the grant. If it is so embraced within the said lines designated on the map as 1, 2, 3, 4 and 5, etc., you will next inquire for how long a time were W. A. Lash and those claiming under him in the actual, hostile, exclusive, continuous possession of said land under known and visible metes and bounds and under said deed. (If the deed to W. A. Lash was not executed until after his death, to-wit: in the year 1878, but if the said Lash had bought the land at execution sale in 1869, and had entered into possession thereof at once under said sale, and he and those renting from him and others claiming under him built houses on the land, cleared the forest, cultivated the soil and went into the actual possession and occupancy of the said land and so remained until the defendant took possession, then the Sheriff's deed would relate back to the execution sale, and the deed would not be void, but would constitute color of title to said Lash and those claiming and holding under him.)
"(And although the survey of the land was not made until 8 December, 1877 — instead of 8 December, 1871 — still, if from said date the lines and boundaries of said tract as described in the complaint were ascertained and determined, known and visible, and thereafter (399) and during the next succeeding seven years said Lash and *Page 274 
those claiming under him were in the actual, exclusive, adverse possession of the said land under the said deed, in this event the plaintiff's possession would have ripened into title.)
"(The issuing of the summons in Nelson v. Neal, in 1884, will not, in the circumstances of the case, arrest the running of the seven-years statute.)
"And it is admitted that the defendant took possession in January, 1885 — about the middle of January. It is for the jury to say whether the plaintiff's deed from Cabell Hairston and wife, and the deed from the Sheriff to the father of Mrs. Cabell Hairston, to W. A. Lash, include and embrace the land described in the plaintiff's complaint.
"(So far as the deposition of W. A. Lash is concerned, and the testimony relating to the possession of the land in controversy, the court instructs the jury that possession is a mixed question of law and fact, and as there is no evidence that Lash and those claiming under him as renters or purchasers were not in possession of the disputed land, that the jury may consider the evidence in said deposition, that he was in possession of the land, as meaning that he was in the actual possession of the same.)
"(The notes given by Smith to W. A. Lash in payment of the land in dispute have been offered for the sole purpose of fixing the date that Smith took actual possession under the said Lash, and the day he gave possession back to the said Lash; the jury will not otherwise consider the same, except as corroborating witness. The witness Dr. W. A. Lash having sworn that the contract made with Smith in 1870 for the sale of said land has been lost or destroyed and cannot be found, and not having been registered, the court permits the (400) said Smith and said Lash to testify under what circumstances said Smith took possession of the land and to designate and qualify such possession. If Smith agreed to purchase the land of W. A. Lash and took actual possession of the same under that agreement, cultivating the land, occupying the houses and exercising acts of ownership over it, and afterwards being unable to pay for the same, gave back the land to Lash and cancelled and destroyed the obligation, Smith's possession would be Lash's possession.)"
The court having written out its charge and read the same in the presence of the counsel on both sides, the defendant's attorneys stated that, as the charge practically eliminated all disputed facts from the consideration of the jury, to-wit: the importance of the date of the survey, whether in 1877 or 1871, and also the disputed fact as to the delivery of the Lash deed after the death of the grantee, and other facts which they considered material, they did not desire to address the jury. *Page 275 
Thereupon, under the charge of the court as given above, the jury found the issue in favor of the plaintiff. Motion for new trial overruled and exception. Errors assigned — the refusal of the Judge to give the defendant's instructions numbered 1, 3, 4, 5, 6, errors in the charge as given, and heretofore specifically designated and placed in parentheses.
The plaintiff introduced in support of the deed made by the Sheriff to W. A. Lash, Sr., on 1 January, 1878, but bearing date 2 November, 1869, "an execution and sheriff's return showing thesale of the lands and purchase by" said Lash "on the day thisdeed bears date." The irresistible inference growing out of this (401) statement is that the return identified "the lands" in controversy and showed that W. A. Lash, Sr., bought. "The presumption is that public officers do as the law and their duty require them to do." Lawson P. Ev., p. 58 (Rule 14). The law required the Sheriff to make due return setting forth the amount of the bid and the fact of the payment of the money by the purchaser, and courts will act on the assumption that the return was true and that it reported the receipt of the money. Hiatt v. Simpson, 35 N.C. 72;Lyle v. Silver, 103 N.C. 261. It has been held that where the sheriff sells under execution, nothing more appearing, it will be presumed that he complied with the law by making due advertisement. Jackson v. Shafer, 11 Johns, 317; Lawson P. Ev., p. 56. Upon the same principle, until the contrary is shown, the law infers that he collected the amount of the bid and reported the fact with the name of the purchaser, which appeared on the return, as it was his duty to do. We have been led into this discussion probably by the omission to bring the execution and return as a part of the transcript, though it was suggested on the argument that there had been some delay in making up a statement on account of the loss of court records and papers. If this return sufficiently described the land, as it is admitted it did, and evidenced — as we must assume it did — the payment of the purchase money, which was the amount offered as a bid, then it identified the subject-matter and defined the nature, extent and foundation of the claim under which the agents and tenants of the purchaser entered 2 November, 1869, and held undisputed possession from that date until 14 December, 1877 — more than seven years. If therefore the deed executed by Sheriff Gentry to W. A. Lash, Sr., after his death, was ineffectual as a *Page 276 
(402) conveyance of the legal title and insufficient as color of title, W. A. Lash nevertheless acquired title before his death on 27 December, 1877, if the return of the Sheriff constituted color. We are aware that in Dobson v. Murphy, 18 N.C. 586, Judge Gaston delivering the opinion of the Court, it was held that such a return upon a fi. fa. was not color of title; but it was conceded that Ruffin, Chief Justice, yielded to the majority of the Court with great hesitation. In Tate v.Southard, 8 N.C. 45, Judge Henderson delivering the opinion of the Court, it was decided that the return of a sheriff upon a fieri facias
was colorable title. When the same case came before the Court a second time it appeared that an attachment had been levied on the land, the return on the writ being "attached one piece of land, that Richardson bought of Kennedy," and that a writ of fi. fa. afterwards issued with no other or better description of the land and was returned "satisfied." After giving the definition of color of title, which was substantially repeated by Gaston, J., in Dobson v. Murphy, supra,Judge Henderson said: "The color of title set up in this case, not being in writing, for he proves the purchase by parol only, wants one of the essentials before mentioned, and is therefore insufficient.If the purchase appeared in the Sheriff's return, it would be necessaryto examine whether such return professed to pass the title." The first opinion in which that learned Judge had passed upon the question directly seems to have remained unchallenged until sixteen years afterwards, when Dobson v. Murphy construed his definition as excluding any sort of a sheriff's return on an execution. In Avent v. Arrington,105 N.C. 379, it appeared that there was no seal to the instrument under which the plaintiffs claimed, and this Court, citing (at page 392) Barger v. Hobbs, 67 Ill. 592, which rested on the grounds that such an instrument showed the extent of the possession and the (403) nature of the claim, held that it was sufficient as color of title, though it passed only an equity in the land to the grantees.
In Brown v. Brown, 106 N.C. 459, Justice Davis, delivering the opinion of the Court and referring to the authorities cited in Avent v. Arrington, said, in discussing and giving the sanction of this Court to the charge of the Judge below: "The possession of Javan Davis and his assignee under the bond for title was the possession of the vendor, under whom they claim,until the purchase money was paid." Wood, in his valuable work on Limitations (2 vol., pp. 648, 649), says: "But where a contract is made for the sale of land upon the performance of certain conditions, and the purchaser enters into possession under the contract, his possession fromthe time of entry is adverse to all except his vendor, and it seems now to be well settled that after the *Page 277 performance by him of all the conditions of the contract, he from thattime holds adversely to the vendor, and full performance is treatedas a sale, and the party in possession may acquire a good title asagainst the vendor by the requisite period of occupancy." In a note the author cites numerous authorities from various courts sustaining the doctrine that whenever a person occupying land under an executory agreement of another to convey pays the purchase money and places himself in such a position that he can demand title, his possession immediately becomes adverse to him who has contracted to convey.Beard v. Ryan, 73 Ala. 37; Catlin v. Deller, 38 Conn. 26; Stowherv. Griffin, 20 Ga. 312; Paxson v. Bailey, 17 Ga. 600; Brown v. King, 5 Metcalf, 173. The Supreme Court of Georgia defined color of title to be "anything in writing, connected with the title, which serves to define the extent of the claim." Field v. Boynton, 33 Ga. 242. InBell v. Longworth, 6 Ind. 273, it was held that where one enters into possession of land under any written agreement defining the character and extent of his claim and pays the purchase money, (404) such entry is under color of title and is adverse to all the world. In giving its sanction to the same doctrine the Supreme Court of Illinois, in McClelland v. Kellogg, 17 Ill. 501, cite a number of cases, chiefly from the courts of New York and Pennsylvania, to sustain the opinion. These authorities and many others which might be added show that the trend of judicial opinion is towards the reasonable view that a purchaser who has paid the price for which he bought, whether from a public officer at auction sale or from an individual contractor, if he is in the occupation of the land bought, holds it adversely to all the world under any writing that describes the land and defines the nature of his claim. As we find in our decision serious conflict in the definitions of color of title, it seems the more reasonable to return to the consistent view taken by so eminent a jurist as Judge Henderson, and from which Judge Ruffin departed only because he was powerless, especially when the weight of reason and of authority elsewhere and the liberal tendency of our own later adjudications tend so strongly in that direction. It is but just to the purchaser that when he pays the price and is delayed in getting a perfect title he should have all of the benefit incidental to the ownership of the legal as well as the equitable estate. Of course he would enjoy and exercise such right subordinate to the registration laws of the State, and would understand that it was to his interest to give constructive notice of his claim by registration of his contract or lis pendens, or both, where practicable, at the earliest possible moment after acquiring a complete equity. *Page 278 
Though since the passage of the act of 1887, ch. 147, an unregistered deed is available as color of title to one in possession, ordinarily (Avent v. Arrington, 105 N.C. 389) the principle will not (405) be extended in its application so far as to defeat the rights of a purchaser without notice; but while litigating with the sheriff when the latter refuses to make title, it seems but just to place him in the same position as if he had obtained a deed on the day when equity declares he has a right to it. The statute has provided for treating him as the owner by subjecting his land to the sale under execution. While he is so exposed, courts administering equity should treat him at least as a colorable owner. It would seem but a fair implication that, when the Legislature declared by the act of 1826 that a complete equity should be subject to sale under execution, the law-making branch of the government meant to treat the owner of such an equity as holding under at least colorable title. In holding that an occupation under a paper-writing in the form of a deed, except that it wants a seal, or under a bond for title after the payment in full of the purchase money, is adverse to all the world and will ripen into a perfect title at the end of the statutory period, this Court is committed to the reasonable principle that one who has a perfect or complete equity in land has color of title. There can be no such thing as a complete equity without some paper-writing signed by the party to be charged and setting forth in terms or by reference to some other paper the same description which will identify the land, as well as the consideration, the receipt of which may be shown aliunde. Our own adjudications have established the principle that a void deed is often, if not generally, color of title (McConnel v. McConnel, 64 N.C. 342) and that a deed executed in pursuance of an act afterwards declared unconstitutional is to be distinguished from one executed in contravention of an express statute or provision of the Constitution. Churchv. Academy, 9 N.C. 234; Ferguson v. Wright, 113 N.C. 537. The occupant is not generally presumed to know the law in so far as (406) it prescribes the nature of conveyances and the usual requisites as to form and substance, and an instrument though defective or informal will be held sufficient, provided he seems to have acquired a right to land. This liberal rule, however, does not extend so far as to assume that he does not know what is expressly prohibited by law.
Viewing the Sheriff's deed as an attempted conveyance executed to W. A. Lash, Sr., after his death, it would be obviously void for want of a grantee and for failure to deliver. But it was insisted that it *Page 279 
would operate to pass the fee to his heirs, who were known and could be identified. If we were at liberty to treat the words "W. A. Lash, Sr., and" as surplusage, then the delivery to W. A. Lash, Jr., who is known to have been at the date of delivery one of the heirs, would inure to the benefit of the other heirs and tenants in common. But it seems to be a well-established principle of interpretation that a deed executed to A, who is at the time dead, or his heirs, is good if his heirs can be identified, for the reason that he will take if living and he has no heirs until his death. No such uncertainty arises, therefore, as in the case of a grant to A or B both living. 3 Wn.burne, 279; Hazon v. Page, 2 Wallace, 607; Readyv. Kearsley, 14 Mich. 224. But a deed to a person not then living "and his heirs" is void because the word "heirs" is a word of limitation and not of purchase. Hunter v. Watson, 12 California, 363.
We concur with his Honor in the opinion that the issuing of the summons by Nelson in 1884 did not under the circumstances arrest the running of the Statute. We do not deem it necessary to notice the other assignments of error, though all have been carefully reviewed. We think, therefore, that as the return described the land, named the purchaser, and showed the payment of the purchase money, it was effectual as color to mature title from its date. The jury (407) found under the instructions of the court below that those under whom the plaintiff claims (W. A. Lash, Sr., and his heirs) held continuous possession for seven years, and such possession will subserve the same purpose, if the return was color of title as if the deed had been valid or sufficient as color and had related back to the sale. It is immaterial whether the return of the deed served the purpose of color so far as it affects the rights of the defendant. The error of the Judge, therefore, did him no harm. The judgment is
Affirmed.
Cited: Williams v. Scott, 122 N.C. 550; Walker v. Miller, 139 N.C. 455;Greenleaf v. Bartlett, 146 N.C. 499; Bond v. Beverly, 152 N.C. 62;Lumber Co. v. Pearce, 166 N.C. 590; Thompson v. Lumber Co., 168 N.C. 229;Butler v. Butler, 169 N.C. 589. *Page 280